# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

THE BANK OF NEW YORK MELLON, FKA
BANK OF NEW YORK, AS TRUSTEE FOR
THE CERTIFICATEHOLDERS OF CWALT,
INC., ALTERNATIVE LOAN TRUST 2007-
12T1, MORTGAGE PASS-THROUGH
CERTIFICATES SERIES 2007-12T1,

               Plaintiffs,

    vs.

MEISTER PARK HOMEOWNERS
ASSOCIATION; NEVADA ASSOCIATION
SERVICES, INC.; SFR INVESTMENTS
POOL 1, LLC,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:16-cv-01969-GMN-EJY

**ORDER**

SFR INVESTMENTS POOL 1, LLC,

               Counter/Cross Claimant,

    vs.

THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF
CWALT, INC., ALTERNATIVE LOAN
TRUST 2007-12T1, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2007-
12T1; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; a
Delaware corporation, as nominee beneficiary
for COUNTRYWIDE HOME LOANS, INC.;
SORAYA BARNES, an individual,

               Counter/Cross
               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Pending before the Court is the Motion for Summary Judgment, (ECF No. 117), filed by Defendant Meister Park Homeowners' Association ("HOA").  Bank of New York Mellon, FKA Bank of New York, As Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-12t1, Mortgage Pass-Through Certificates Series 2007-12t1 ("BNYM") filed a Response, (ECF No. 126), to which HOA filed a Reply, (ECF No. 130).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 120), filed by SFR Investments Pool 1, LLC ("SFR").  BNYM filed a Response, (ECF No. 127), to which SFR filed a Reply, (ECF No. 139).

Also pending before the Court is the Motion to Dismiss, or in the alternative, Motion for Summary Judgment, (ECF Nos. 124–125), filed by BNYM.  SFR filed a Response to BNYM's Motion to Dismiss, (ECF No. 129), to which BNYM filed a Reply, (ECF No. 131).[1]  HOA and SFR each filed a Response to BNYM's Motion for Summary Judgment, (ECF Nos. 132, 137), to which BNYM filed a Reply, (ECF No. 143).

Also pending before the Court is the Counter-Motion to Strike, (ECF No. 138), filed by SFR.  BNYM filed a Response, (ECF No. 142), to which SFR filed a Reply, (ECF No. 144).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** HOA's Motion for Summary Judgment.  The Court **GRANTS** SFR's Motion for Summary Judgment.  The Court **DENIES** BNYM's Motion to Dismiss and Motion for Summary Judgment.  The Court **GRANTS in part** and **DENIES in part** SFR's Counter-Motion to Strike.

I.    **BACKGROUND**

This case arises from the foreclosure sale of real property located at 292 Ben Johnson Court, Las Vegas, Nevada 89183-4203; Parcel No. 177-28-710-001 (the "Property"). (Deed of

---

[1] HOA also filed a "Notice of [HOA's] Statement in Response to Bank of New York Mellon's Motion to Dismiss." (*See* Notice, ECF No. 128).

Trust, Ex. 1 to BNYM's Mot. Dismiss, ECF No. 124-1).  Soraya Barnes ("Borrower") purchased the Property by way of a loan for $440,000.00, evidenced by a note and secured by a deed of trust ("DOT") recorded on March 15, 2007. (*Id*. at 3).  The DOT was later assigned to BNYM. (Assignment of DOT, Ex. 2 to BNYM's Mot. Dismiss, ECF No. 124-2).

On March 14, 2013, Borrower filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court, District of Colorado under Case No. 13-21222-SBB. (*See* Voluntary Bankruptcy Petition, Ex. 13 to BNYM's Mot. Dismiss, ECF No. 124-13); (*see also* Bankr. Docket, Ex. 15 to BNYM's Mot. Dismiss, ECF No. 124-15).  Borrower listed the Property as an asset of the bankruptcy estate. (*See* Voluntary Bankruptcy Petition, Ex. 13 to BNYM's Mot. Dismiss).  The bankruptcy case concluded on March 27, 2014, and no creditor moved to lift the automatic stay during the case's pendency. (*See* Bankr. Docket, Ex. 15 to BNYM's Mot. Dismiss).

On May 28, 2013, upon Borrower's failure to pay all amounts due, Meister Park Homeowners Association ("HOA"), through its agent, Nevada Association Services, Inc. ("NAS"), initiated foreclosure proceedings on the Property. (Notice of Delinquent Assessment, Ex. 17 to BNYM's Mot. Dismiss, ECF No. 124-17).  Pursuant to Nevada Revised Statute ("NRS") Chapter 116, NAS recorded a notice of default, followed by a notice of foreclosure sale. (Notice of Default, Ex. 19 to BNYM's Mot. Dismiss, ECF No. 124-19); (Notice of Foreclosure Sale, Ex. 22 to BNYM's Mot. Dismiss, ECF No. 124-22).  SFR, on January 31, 2014, purchased the Property at HOA's foreclosure sale. (Foreclosure Deed, Ex. 3 to BNYM's Mot. Dismiss, ECF No. 124-3).

On August 18, 2016, BNYM commenced this action by filing its Complaint against HOA, Nevada Association Services, Inc. ("NAS"), and SFR, asserting five causes of action: (1) quiet title; (2) breach of Nevada Revised Statute ("NRS") § 116.1113; (3) wrongful foreclosure; (4) request for injunctive relief against SFR; and (5) deceptive trade practices.

1   (Compl. ¶¶ 27–76, ECF No. 1).  SFR filed an answer and counterclaim to BNYM 's Complaint,

2   seeking declaratory relief that SFR's rights and interest are superior to BNYM's and injunctive

3   relief prohibiting BNYM from selling or transferring the Property. (SFR's Counterclaim ¶¶ 47–

4   61, ECF No. 24).

5          On April 20, 2018, the Court entered summary judgment in favor of BNYM after

6   concluding that HOA's foreclosure of the Property occurred under a facially unconstitutional

7   scheme. (Order 5:1–6:17, ECF No. 92).  That entry of summary judgment centered on then-

8   binding precedent of *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.* ("*Bourne Valley*"),

9   832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26,

10  2017).  Following SFR's Notice of Appeal, this Court vacated its previous Order for having

11  relied on *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, which had been repudiated by

12  the Nevada Supreme Court in the interim. (Order, ECF No. 102).

13         While on appeal, BNYM held a foreclosure sale on June 26, 2019 and sold the Property

14  to Catamount for $319,501.00 pursuant to NRS 107. (Foreclosure Deed, Ex. 3 to Catamount's

15  Mot. Order Rental Payments, ECF No. 148).  On January 22, 2020, the Circuit accordingly

16  reversed the Court's Order on summary judgment and remanded for consideration of *Arlington*

17  *West* and any alternate bases for summary judgment. (ECF No. 106).  BNYM, HOA, SFR, and

18  Catamount thereafter filed the pending Motions.

19  **II.    LEGAL STANDARD**

20          **A. Motion to Dismiss**

21          Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon

22  which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23  555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

24  which it rests, and although a court must take all factual allegations as true, legal conclusions

25  couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule

12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Motion to Strike

The Court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion. *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).  However, federal courts disfavor motions under Rule 12(f) and generally view them as a drastic remedy. *See*, *e.g.*, *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012); *Mag Instrument, Inc. v. JS Products Inc.*, 595 F. Supp. 2d 1102, 1006 (C.D. Cal. 2008); *Sorenson v. Countrywide Home Loans, Inc.*, 2010 WL 308794, at *2 (E.D. Cal. Jan. 12, 2010).  "If the court is in doubt as to whether challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (citing *Whittlestone, Inc. v. HandiCraft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### C. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

BNYM moves to dismiss the case, arguing that the case is now moot given that BNYM foreclosed on its interest. (BNYM's Mot. Dismiss 4:16–7:6, ECF No. 124).  In the alternative, BNYM moves for summary judgment. (*See* BNYM's Mot. Summ. J., ECF No. 125).  Defendant HOA and SFR each filed a cross-motion for summary judgment. (*See* HOA's Mot.

Summ. J., ECF No. 143); (SFR's Mot. Summ. J., ECF No. 120).  SFR also filed a Counter-Motion to Strike exhibits from BNYM's Motion for Summary Judgment. (*See* SFR's Mot. Strike, ECF No. 120).  The Court first addresses BNYM's Motion to Dismiss.

### A. BNYM's Motion to Dismiss, (ECF No. 124)

BNYM first argues that the case should be dismissed as moot because BNYM properly foreclosed on the Property following this Court's Entry of Judgment in favor of BNYM. (*Id.* 4:16–21).  In response, SFR asserts that BNYM fails to demonstrate that the claims are moot given that BNYM and SFR both still have legally cognizable interests in the final determination of the underlying questions of fact and law in this case. (SFR's Resp. to BNYM's Mot. Dismiss 5:20–22, ECF No. 129).  Because the Court still has the ability to rule on the effect of HOA's foreclosure sale on the DOT, SFR argues that this case should not be dismissed for mootness. (*Id.* 5:21–23).

"A claim becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir.2014) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).  An "actual controversy must be extant at all stages of review." *Alvarez v. Smith*, 558 U.S. 87, 92, 130 S. Ct. 576, 175 L. Ed. 2d 447 (2009).  Because "the federal courts 'are without power to decide questions that cannot affect the rights of litigants in the case before them,'" the "'parties' stake in the outcome of [a] case must exist not only at the case's inception, but for the entire duration of the proceedings." *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 474 (4th Cir. 2015) (quoting *DeFunis v. Odengaard*, 416 U.S. 312, 316 (1974)).  "The party asserting mootness bears the burden of establishing that there is no effective relief remaining that the court could provide." *S. Oregon Barter Fair v. Jackson Cty., Oregon*, 372 F.3d 1128, 1133–34 (9th Cir. 2004).

1      BNYM fails to meet its burden in demonstrating mootness.  The Court agrees with

2 BNYM that the June 2019 foreclosure sale extinguished BNYM's personal interest in this

3 claim—namely, the status of its DOT on the Property. *See* 15 Moore's Federal Practice - Civil

4 § 101.94 (2020) ("Once a plaintiff is divested of standing by virtue of the absence of a personal

5 stake in the controversy, the necessary adversity of interests between the parties, demanded by

6 Article III, is lacking.").  However, "the Court has applied the doctrine flexibly, particularly

7 where the issues remain alive, even if 'the plaintiff's personal stake in the outcome has become

8 moot.'" *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011) (citing Matthew I.

9 Hall, The Partially Prudential Doctrine of Mootness, 77 Geo. Wash. L.Rev. 562, 622 (2009));

10 *see also Powell*, 395 U.S. at 497 ("Where one of the several issues presented becomes moot,

11 the remaining live issues supply the constitutional requirement of a case or controversy.").

12 Here, BNYM's interests are not the only interests at issue.  SFR, in its Counterclaim, requests

13 declaratory relief that the HOA foreclosure sale was valid. (SFR's Counterclaim 16:10–19).

14 Specifically, SFR's request for declaratory relief is threefold: (1) that SFR is the title owner of

15 the Property; (2) that the Association Foreclosure Deed is valid and enforceable; and (3) that

16 SFR's rights and interest in the Property are superior to any adverse interest claimed by

17 BNYM. (*Id.* ¶ 53).  While BNYM's interest terminated when it foreclosed on its DOT, SFR's

18 counterclaim for declaratory relief regarding the validity of the HOA foreclosure deed is still a

19 live issue.[2]   The Ninth Circuit came to a similar conclusion in *Goodwin v. United States*, 935

20 F.2d 1061 (9th Cir. 1991).  There, the plaintiff filed a complaint seeking an order restraining

21 the Government from selling his Property. *Id.* at 1063.  Pursuant to a valid judgment granting

22 the Government's motion for summary judgment, the Government thereafter sold the property

23 to a third party. *Id.*  The plaintiff appealed and the Government argued that the appeal was moot

24

25
___
[2] SFR also requests injunctive relief prohibiting BNYM from "initiating or continuing foreclosure proceedings, and from selling or transferring the Property." (SFR's Counterclaim 16:15–17).  Because BNYM foreclosed on its DOT on June 26, 2019, SFR's request for injunctive relief is now moot. (*See* Foreclosure Deed, Ex. 3 to BNYM's Mot. Summ. J.).

because the plaintiff should have obtained an order enjoining the sale of the Property. *Id.* The Ninth Circuit nevertheless determined that the sale of the property to a third party did not render Plaintiff's appeal moot because the court could still determine "the validity of the seizure and lien foreclosure sale through which the government obtained" the deed. *Id.* at 1064.

Likewise here, even though BNYM foreclosed in its interest when it sold the Property to Catamount, the Court may still grant effective relief in determining the validity of the initial HOA foreclosure sale through which BNYM obtained the DOT. *See also Biodiversity Legal Found. v. Badgley*, 284 F.3d 1046, 1054 (9th Cir. 2002) (finding that "there remains a substantial controversy between parties who have adverse legal interests and that the controversy is of sufficient immediacy and reality to warrant declaratory relief"). SFR's state court case additionally demonstrates that a live issue remains as to the adverse legal interests on the Property. In SFR's state court complaint, Case No. A-19-799643-C, SFR requests two forms of relief: (1) declaratory relief that the June 26, 2019 sale was void; and (2) injunctive relief prohibiting further transfer or sale of the Property. (*See* Complaint filed in A-19-799643-C ¶¶ 27–48, Ex. 10 to BNYM's Mot. Dismiss, ECF No. 124-10). In a footnote, SFR mentions this instant action, stating that "should the appellate court reverse the order declaring the Deed of Trust survived the Association foreclosure sale . . . SFR would have an additional basis for its wrongful foreclosure claim." (*Id.* at 4 n.1). While SFR's state court claim does not seek to set aside BNYM's sale on the basis that BNYM's DOT was extinguished by the HOA foreclosure sale, SFR and BNYM's interests are relevant to the wrongful foreclosure suit in state court. A potential finding that BNYM foreclosed pursuant to a non-existent DOT affects SFR's wrongful foreclosure claims in state court. The Court does not attempt to determine here whether the 2019 foreclosure sale was wrongful. SFR's state court claim, however, nevertheless demonstrates that there remains a live issue as to the validity of the HOA foreclosure sale that this Court may fashion effective relief.

BNYM further argues that this case is moot because Defendants failed to obtain a stay of this Court's earlier judgment in favor of BNYM. (BNYM's Mot. Dismiss 4:22–6:27).  BNYM relies on a string of bankruptcy cases to support a finding that Defendants' failure to stay the district court order thereby renders moot any subsequent appeal or continued litigation. (*Id.*). The bankruptcy cases BNYM cites to, however, are inapposite.[3]  While a stay pending appeal over disputed property in a bankruptcy case is mandatory, seeking a stay is permissive in an ordinary, non-bankruptcy civil context. *Compare* Fed. R. Civ. Proc. 62(b) ("a party *may* obtain a stay by providing a bond or other security") (emphasis added), *with In re Mann*, 907 F.2d 923, 926 (9th Cir. 1990) ("the debtor's failure to obtain a stay normally renders the appeal moot"), *and In re Lashley*, 825 F.2d 362, 364 (11th Cir. 1987) (when a party does not obtain a stay pending appeal of a bankruptcy court or district court order and allows "a creditor to foreclose on property the subsequent foreclosure renders moot" any further litigation).  Though SFR could have sought a stay pending appeal in this case, its failure to do so is not fatal to its declaratory judgment claim. *See Goodwin*, 935 F.2d at 1064 ("Goodwin's failure to attempt to preserve the status quo pending appeal has forestalled our ability to grant relief on his request that the district court enjoin the government from selling the Gladstone property.  However, we may still determine the validity of the seizure and lien foreclosure sale through which the government obtained a [deed].").

Lastly, BNYM contends that dismissing this action as moot is consistent with public policy. (BNYM's Mot. Dismiss 6:28–7:6).  BNYM, however, fails to provide supporting evidence that the public policy behind Federal Rule of Civil Procedure 62 intends to protect the integrity and finality of property sales and/or final judgments.  BNYM only cites to *Deutsche*

---

[3] Indeed, the Ninth Circuit appears to uniquely address mootness in bankruptcy proceedings, determining that "in bankruptcy, mootness comes in a variety of flavors: constitutional, equitable, and statutory." *In re Castaic Partners II, LLC*, 823 F.3d 966, 968 (9th Cir. 2016) (citing *Clear Channel Outdoor Inc. v. Knupfer (In re PW, LLC),* 391 B.R. 25, 33 (9th Cir. BAP 2008).

*Bank Nat'l Tr. Co. as Tr. for Indymac Indx Mortg. Loan Tr. 2006-AR25 v. Roman*, 128 N.E.3d 381, 388 (Il. App. 1st 2019), an Illinois state appellate court case that is non-binding on this Court.  If SFR prevails upon its claim for declaratory relief, the Court would effectively declare that BNYM foreclosed upon a non-existent interest in the Property.  Surely the need to adjudicate parties' rights after an unlawful foreclosure outweighs the public interest in the finality of real property conveyance.  Because BNYM fails to meet its burden, the Court therefore finds that this case is not moot.

**B.  SFR's Counter-Motion to Strike, (ECF No. 138)**

Because a portion of BNYM's Motion for Summary Judgment relies upon information encompassed in SFR's Counter-Motion to Strike, the Court first addresses SFR's Counter-Motion to Strike Documents from BNYM's alternative Motion for Summary Judgment.  In its Motion, SFR requests the Court strike Exhibits 13–17, 21, 26–28, 30, and 32, "any references to testimony of David Stone or Chris Yergensen, and arguments based on these undisclosed documents and testimony of undisclosed witnesses." (SFR's Mot. Strike 4:3–5, ECF No. 138). Pursuant to this Court's inherent power to strike party submissions, SFR argues that BNYM's failure to provide the relevant information as initial disclosures is prejudicial and thus warrants this Court striking the documents. (*Id*. 6:3–10).  In response, BNYM argues that all the exhibits—except for Exhibit 30—are publicly available documents subject to judicial notice. (BNYM's Reply to Mot. Strike 3:2–3).  BNYM therefore asserts that it had no duty to disclose the above exhibits during discovery. (*Id*. 3:6–13).

As a preliminary matter, the Court notes that SFR's Motion to Strike is actually a motion for discovery sanctions under Rule 37(c)(1). (*See* SFR's Mot. Strike 4:6–5:4).  "Under Rule 12(f), a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, Case No. 2:12-CV-00560-MMD, 2014 WL 1305144, at *6 (D. Nev. Mar. 31, 2014).  "Motions to strike apply only to

pleadings, and courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto." *Id.* (citation omitted) (denying motion to strike declarations submitted in support of summary judgment motions). Nevertheless, the Court has "inherent power to strike a party's submissions other than pleadings." *Mazzeo v. Gibbons*, No. 2:08-CV-01387-RLH-PA, 2010 WL 3910072, at *3 (D. Nev. Sept. 30, 2010). The Court therefore broadly construes SFR's Motion to Strike as a motion for discovery sanctions pursuant to Rule 37(c)(1). *See also Carisbrook Asset Holding Tr. v. SFR Investments Pool 1, LLC*, No. 3:17-CV-00370-MMD-WGC, 2019 WL 2393614, at *2 (D. Nev. June 6, 2019).

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. *See* Fed. R. Civ. P. 26(a). Rule 26(a)(1)(A)(i) requires parties to disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses" at the outset of a civil suit. Similarly, Rule 26(a)(1)(A)(ii) requires parties to disclose "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore*, LLC, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly, Ltd*, 259 F.3d at 1106); Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827; Fed. R. Civ. P. 37(c)(1).

### i. Exhibits 13–16 and 21

BNYM argues that it did not have a duty to disclose the above exhibits because the documents are publicly available and thereby, judicially noticeable under Federal Rule of Civil

Procedure 201. (BNYM's Resp. to Mot. Strike 3:1–22, ECF No. 142). BNYM, however, fails to provide case law demonstrating a broad exception for public documents under Rule 26. BNYM cites to *Assurance Co. of America v. Nat'l Fire & Marine Ins. Co.* where the Court held that there was no duty to disclose public documents that were readily and equally available to all parties. *Assurance Co. of Am*, No. 2:09-CV-1182 JCM PAL, 2012 WL 1970017, at *4 (D. Nev. June 1, 2012). There, plaintiff's counsel learned of judicially noticeable documents through the discovery process and accessed them on the Clark County District Court website. *Id*. Because the documents were of the public record, the Court held that there was no duty to disclose them during discovery. *Id*.

This instant case, however, is distinguishable. The Court in *Assurance Co. of America* did not address Rule 26 initial disclosures, but rather, discussed the general duty to produce discovery that is equally available to all parties. *Id*. In addition, unlike the plaintiff in *Assurance Co. of America* who initially disclosed the documents at issue in an exhibits list, BNYM did not disclose the existence of the bankruptcy petition until its second Motion for Summary Judgment. Although anyone can search and locate public bankruptcy documents in the federal court system, Defendants did not know there was a bankruptcy petition in this case and more critically, did not know that BNYM planned on using the bankruptcy documents in this case. *See Deutsche Bank Nat'l Tr. Co. v. Seven Hills Master Cmty. Ass'n*, No. 2:15-CV-01373-APG-NJK, 2016 WL 1639885, at *2 (D. Nev. Apr. 25, 2016) (finding that "the public availability of the documents did not place Plaintiff on notice that SFR would seek to use them in the instant case" and thereby, Rule 26(a)(1)(A)(ii) required their disclosure). Though the bankruptcy documents are of the public record and therefore, judicially noticeable,[4] BNYM's

---

[4] Under Federal Rule of Evidence 201, a court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questions." "When ruling on a motion for summary judgment, the Court may take judicial notice of matters of public record, including public documents." *See Harlow v. MTC Fin. Inc.*, 865 F. Supp. 2d 1095, 1098 (D. Nev. 2012). Here, Exhibits 13–16 and 21 concern Borrower's Petition for Bankruptcy in United States Bankruptcy Court in the District of Colorado, Case No. 13-

failure to timely disclose the existence of the underlying bankruptcy petition violates Rule

26(a)(1)(A). *See* Fed. R. Civ. Pro. 26(a)(1)(A)(ii) (requiring all parties to disclose "a copy . . .

of all documents . . . that the disclosing party has in its possession, custody, or control and *may*

*use to support its claims or defenses*) (emphasis added); *see also Shott v. Rush Univ. Med. Ctr.*,

No. 11 C 50253, 2015 U.S. Dist. LEXIS 1322, at *8 (N.D. Ill. Jan. 7, 2015) ("there is no

exception to the Rule 26 obligations for public documents or a broad exemption for documents

otherwise available to both parties.").

The Court now turns to Rule 37(c) to determine if BNYM's failure to timely disclose the

exhibits was substantially justified or harmless.  "Several factors guide the determination of

whether substantial justification and harmlessness exist, including (1) prejudice or surprise to

the party against whom the evidence is offered; (2) the ability of that party to cure the

prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely

disclosing the evidence." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev.

2017) (citations omitted).  "The party facing sanctions bears the burden of establishing that

substantial justification or harmless exists." *Id.*  Here, the factors weigh in favor of excluding

the exhibits.  First, as discussed above, SFR first learned about BNYM's argument pertaining to

the bankruptcy proceeding in BNYM's Motion for Summary Judgment.  As SFR states, had the

documents and witnesses been disclosed during the discovery period, SFR could have

conducted additional depositions. (SFR's Mot. Strike 8:6–8).   BNYM claims that the non-

disclosure was justified because *Bourne Valley* was controlling law the entire time the case was

litigated and therefore, many courts declined to consider additional arguments beyond *Bourne*

*Valley.* (BNYM's Resp. to Mot. Strike 4:2–23).  BNYM, however, could have supplemented its

disclosures when it prepared and filed its second Motion for Summary Judgment. *See*

*Carisbrook Asset Holding Tr. v. SFR Investments Pool 1, LLC*, No. 3:17-CV-00370-MMD-

_____

21222-SBB.[4]  These documents are subject to judicial notice, as they are documents filed and orders entered on
the public record. *See* Fed R. Evid. 201.

WGC, 2019 WL 2393614, at *3 (D. Nev. June 6, 2019) (finding that Plaintiff's failure to disclose was not substantially justified because "Plaintiff had an obligation to supplement its disclosures when it prepared and filed its Motion—which added a Tender Argument not included in its First MSJ"); *see also Yeti by Molly, Ltd*, 259 F.3d at 1106 (finding that defendants, who failed to disclose required information, harmed the opposing party because the defendants could have issued a supplemental preliminary report or could have asked for an extension of the discovery deadline).  Indeed, BNYM added additional arguments in its second Motion for Summary Judgment, including arguments regarding quiet title/declaratory judgment, violation of the bankruptcy stay, futile tender, and the reasonableness of the HOA foreclosure sale, that were not asserted in its first Motion for Summary Judgment. Though no trial date has been set, the Court finds that the surprise of the additional bankruptcy proceeding harmed Defendants in their preparation for the Motions for Summary Judgment. *Cf. Bank of Am., N.A. v. Lake Mead Court Homeowners' Ass'n*, No. 2:16-CV-00504-GMN-NJK, 2019 WL 208864, at *7 (D. Nev. Jan. 15, 2019) (denying the Motion to Strike because SFR knew Plaintiff's substantive legal theory at the outset of the case and thereby, had ample opportunity to consider Plaintiff's arguments).  The Court accordingly strikes Exhibits 13–16 and 21.

ii.  <u>Exhibit 17</u>

Exhibit 17 is the HOA's Notice of Delinquent Assessment Lien.  This exhibit was disclosed in BNYM's Initial Disclosures. (*See* BNYM's Initial Disclosures 6:16–17, Ex. A-1 to SFR's Mot. Strike ECF No. 138-2).  The Court therefore denies SFR's request to exclude Exhibit 17.

iii.  <u>Exhibits 26–28 and 32</u>

Exhibits 26–28 concern Chris Yergensen's testimony in three different state court trials.  Exhibit 32 is a state court's findings of fact and conclusions of law in Case No. A698511-C.  SFR specifically argues that Exhibits 26–28 must be excluded because BNYM failed to identify

1  Chris Yergensen as a witness. (SFR's Mot. Strike 7:2–15).  BNYM, in response, asserts that the

2  exhibits are public documents whose accuracy cannot be reasonably questioned. (BNYM's

3  Resp. to Mot. Strike 3:26–4:1).  As explained above, BNYM fails to support its assertion that

4  publicly recorded documents are not required disclosures under Rule 26(a)(1)(A)(i).

5       To the extent BNYM ran afoul of Rule 26 by failing to disclose Chris Yergensen in the

6  trial transcripts, the Court finds the omission harmless.  Notwithstanding BNYM's failure to

7  identify Yergensen, BNYM's second supplemental disclosure to its initial disclosures,

8  submitted during discovery, put SFR on notice that a corporate representative of NAS would

9  testify to BNYM's alleged tender of the superpriority amount. (*See* BNYM's Second Suppl.

10  Disclosures 6:26–28, Ex. A-4 to SFR's Mot. Strike, ECF No. 138-4).  The disclosures also

11  expressly name the NAS Records as documents to which BNYM intends to rely. (*Id*.).  Even

12  prior to the supplemental disclosures, BNYM's Complaint alerted SFR of its theory of this case

13  by alleging that HOA and/or HOA's agent would have rejected the attempted tender. (Compl.

14  ¶¶ 24, 41).  The record in this case demonstrates that SFR was on notice of BNYM's tender

15  theory from the outset and knew about the NAS Records early in this case.[5]  While SFR

16  complains that Plaintiff's incomplete disclosures prevented SFR from conducting additional

17  depositions, the Court cannot discern how SFR was prejudiced in its ability to defend against

18  Plaintiff's allegations when it knew of the NAS Records as well as the centrality of Plaintiff's

19  tender theory to this case.

20       Regarding Exhibit 32, the Court also finds that the omission harmless.  As a preliminary

21  matter, it does not appear that BNYM relies on Exhibit 32 in its Motion for Summary

22  Judgment.  The Judgment also includes testimony from Chris Yergensen. (Findings of Fact ¶¶

23

24    [5] The Court notes that the SFR's notice of BNYM's theory of attempted tender differentiates this Court's finding
with regards to the trial testimony transcripts—Exhibits 26–28— from the Court's finding with the bankruptcy

25  documents—Exhibits 13–16 and 21.  Unlike the theory of attempted tender, BNYM does not mention the
bankruptcy proceeding or any related theory in its Complaint. (*See* Compl. ECF No. 1).

35–38, 46–48, Ex. 32 to BNYM's Mot. Summ. J., ECF No. 125-32).  Accordingly, for the same reasons above, the Court denies SFR's request to exclude Exhibits 26–28 and 32.

iv.  <u>Exhibit 30</u>

Exhibit 30 is a title policy.  SFR argues that the policy was not produced with any of BNYM's disclosure or in response to any written discovery requests despite several requests that would have required its production. (SFR's Mot. Strike 7:16–22).  BNYM, however, does not respond to SFR's request to exclude this exhibit. (BNYM's Resp. to Mot. Strike 3:2–3). The title policy was not disclosed in BNYM's initial disclosures.  Nevertheless, given that BNYM fails to meet its burden in demonstrating harmlessness, the Court accordingly grants SFR's request and strikes Exhibit 30.

**C.  Motions for Summary Judgment, (ECF Nos. 117, 120, 125)**

BNYM moves for summary judgment on the following grounds: (1) HOA failed to properly service its Notices; (2) the HOA foreclosure sale violated the automatic bankruptcy stay; (3) its failure to tender the superpriority portion of HOA's lien may be excused because HOA and/or NAS—HOA's agent—would have rejected tender; (4) HOA's foreclosure sale violated BNYM's constitutional rights; (5) HOA foreclosed on only its subpriority lien; and (6) the sale should be set aside in equity under *Shadow Canyon*. (BNYM's Mot. Summ. J. 12:13–31:3).

HOA argues that: (1) it complied with the constitutional non-judicial foreclosure scheme in NRS Chapter 116; (2) BNYM's quiet title/declaratory relief claims fail; (3) BNYM's claim for wrongful foreclosure fails because BNYM cannot demonstrate that the prior homeowner was not in default at the time of the sale; (4) BNYM only had a lien to the property; and (5) BNYM's deceptive trade practices claim fails as a matter of law. (HOA's Mot. Summ. J. 5:16–15:26).

SFR, in its Motion for Summary Judgment, argues that: (1) it complied with the constitutional non-judicial foreclosure scheme in NRS Chapter 116; and (2) BNYM's lis pendens must be expunged. (SFR's Mot. Summ. J. 10:3–13:11, ECF No. 120).  The Court first addresses BNYM's and HOA's Cross-Motions for Summary Judgment before turning to SFR's Motion for Summary Judgment.

### i.   Statutorily Required Notices

BNYM first argues that HOA failed to comply with the statutory notice requirements under Chapter 116 of the Nevada Revised Statutes, and that this failure alone renders the HOA foreclosure sale invalid. (BNYM's Mot. Summ. J. 13:20).  Defendant HOA, in response, argues that BNYM does not have standing to assert rights and defenses of the prior homeowner. (HOA's Resp to BNYM's Mot. Summ. J. 4:16–21)  Even if BNYM did have standing, HOA asserts that it provided adequate notice pursuant to NRS 116.31162 when it mailed the notices to the prior homeowner at the Property and P.O. Box. (*Id.* 5:2–4).

The Nevada Supreme Court explained in *U.S. Bank v. Resources Group, LLC* that a void sale requires two findings: lack of notice and prejudice. *U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 444 P.3d 442, 447 (2019); *see also Nationstar Mortg., LLC v. Thunder Properties, Inc.*, No. 2:17-CV-000713-JAD-NJK, 2020 WL 5805491, at *3 (D. Nev. Sept. 29, 2020).  Because BNYM fails to argue, let alone provide evidence, that it suffered prejudice from HOA's failure to comply with the statutory notice requirements, the Court cannot find that the HOA foreclosure sale was void on this ground.

### ii.   Constitutionality and Breach of NRS 116

BNYM makes two main arguments in support of its assertion that the HOA foreclosure sale violated its constitutional rights: (1) NRS 116 remains facially unconstitutional even in light of *Bourne Valley* and (2) NRS 116 *et seq*. is unconstitutional as applied to BNYM. (BNYM's Mot. Summ. J. 19:3–24:23).  As this Court has previously explained, in light of the

Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon ("SFR 2")*, 422 P.3d 1248, 1252 (Nev. 2018) (*en banc*), *Bourne Valley* is no longer controlling law with respect to NRS Chapter 116's notice provisions and, consequently, its finding of facial unconstitutionality. *See Bank of Am., N.A. v. Falcon Point Ass'n*, 347 F. Supp. 3d 592, 597-99 (D. Nev. 2018). To the extent there is any lingering doubt, the Ninth Circuit Court of Appeals has recently put the issue to rest. *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623-24 (9th Cir. 2019) ("*Bourne Valley* no longer controls the analysis, and we conclude that Nev. Rev. Stat. § 116.3116 et seq. is not facially unconstitutional on the basis of an impermissible opt-in notice scheme."). Accordingly, to the extent BNYM seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

BNYM asserts that, despite the Arlington's holding, NRS 116 remains facially unconstitutional because it did not require constitutionally adequate notice. (BNYM's Mot. Summ. J. 19:14–16). BNYM's argument is twofold. First, BNYM argues that, despite *Arlington*'s holding, *Bourne Valley*'s state-action decision survived *SFR 2* because what constitutes "state action" for federal due process is a federal issue. (*Id*. 19:19–21:3). Second, BNYM argues that NRS § 116's notice requirements as incorporated did not sufficiently warn lenders that their property interests were at stake. (*Id*. 25:1–28:8). Because the Court finds that BNYM received constitutionally adequate notice, it need not determine whether enactment of NRS § 116 constituted state action.

Courts in this district have similarly addressed these arguments. *See Deutsche Bank Nat'l Tr. Co. v. Pac. Sunset Vill. Homeowners Ass'n* ("*Pac. Sunset Vill. Homeowners*"), No. 2:16-CV-02174-KJD-NJK, 2019 WL 4773796, at *5 (D. Nev. Sept. 30, 2019); *U.S. Bank, N.A. v. SFR Investments Pool 1, LLC* ("*U.S. Bank*"), No. 2:15-CV-00218-KJD-NJK, 2019 WL 4576257, at *5 (D. Nev. Sept. 19, 2019), aff'd sub nom. *U.S. Bank, N.A. v. White Horse Estates Homeowners Ass'n*, No. 19-17033, 2021 WL 419483 (9th Cir. Feb. 8, 2021). In those cases,

1    courts held that the HOA trustee's two notices adequately informed the lender that the HOA

2    intended to foreclose on the Property. *Pac. Sunset Vill. Homeowners*, No. 2:16-CV-02174-

3    KJD-NJK, 2019 WL 4773796, at *6 (D. Nev. Sept. 30, 2019).  In tandem with NRS § 116, the

4    recorded Notice of Default and Notice of Trustee's Sale adequately provided notice "that would

5    reasonably warn other lienholders of some action that could affect their property interests." *Id*.

6    Accordingly, courts have held that NRS § 116.3116's notice scheme constitutionally adequate.

7           The same analysis applies here.  In this case, HOA, through its agent, NAS, recorded a

8    Notice of Default and Election to Sell in August 2013. (Notice of Default, Ex. 19 to BNYM's

9    Mot. Dismiss).  NAS, HOA's agent, recorded a Notice of Foreclosure Sale in January 2014.

10   (Notice of Foreclosure Sale, Ex. 22 to BNYM's Mot. Dismiss).  The Notice of Foreclosure Sale

11   warned that failure to pay the delinquent assessment balance could cause the homeowner to

12   lose their home. *Id*.  These two notices, like the notices in *Pac. Sunset Vill. Homeowners* and

13   *U.S. Bank*, provided constitutionally adequate notices to lender.  The Court accordingly denies

14   BNYM's motion for summary judgment on this ground.

15          Regarding BNYM's as-applied challenge, it is of no consequence that the notice failed

16   to specify the superpriority portion of HOA's lien that could be tendered.  As another court in

17   this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of

18   no consequence because Chapter 116 gives lienholders notice that the HOA may have a

19   superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy*

20   *Bay LLC Series*, No. 2:17-CV-02808-APG-CWH, 2018 U.S. Dist. LEXIS 112753, 2018 WL

21   3312969, at *3 (D. Nev. July 5, 2018).  The Nevada Supreme Court has also rejected the

22   argument that foreclosure notices must always state the superpriority portion, reasoning, in part,

23   that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed

24   of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v.*

25   *U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (*en banc*).  Therefore, absent additional evidence

suggesting fraud, oppression, or unfairness, HOA's failure to explicitly state the superpriority portion of the lien does not justify setting aside the sale for the alleged due process violations.

### iii.  Quiet Title/Declaratory Judgment

The parties do not dispute that BNYM did not tender the superpriority portion of HOA's lien to prevent the extinguishment of the DOT. (*See* BNYM's Reply 6:18–20).  Rather, BNYM argues that title should be quieted in its favor because tender would have been futile. (BNYM's Mot. Summ. J. 16:2–19:1).  BNYM makes two arguments in support of its assertion that tender was futile: (1) the Nevada Supreme Court's decisions in *7510 Perla del Mar Ave Trust v. Bank of America, N.A.*, 458 P.3d 348 (Nev. 2020) and *SFR Investments Pool 1, LLC v. Bank of America, N.A.*, 459 P.3d 880, 2020 WL 1492829 (Nev. March 24, 2020) preclude further litigation as to NAS's policy of rejecting tender; and (2) even if issue preclusion does not apply, BNYM demonstrates that NAS had a known policy of rejecting tender. (*Id.* 16:1–19:1).

#### 1.  Issue Preclusion

SFR contests BNYM's application of issue preclusion, arguing that issue preclusion does not apply because: (1) SFR was neither a party nor in privity to a party in *Perla Del Mar*; (2) both *Perla Del Mar* and *SFR Investments Pool 1* involve significantly different facts; and (3) SFR did not have a full and fair opportunity to litigate the issues in *SFR Investments Pool 1*. (SFR's Resp. to BNYM's Mot. Summ. J. 19:10–19).

Under Nevada law, issue preclusion applies if: (1) the issue in the two proceedings is identical; (2) the prior decision was a final ruling on the merits; (3) the party against whom the judgment is asserted was a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.[6] *Five Star Capital Corp. v. Ruby*, 194 P.3d 709,

---

[6] The Court notes that the relevant standard for issue preclusion is determined based on Nevada state law, not federal law.  The general rule is that federal courts must give the "same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)).  Federal courts must apply the res judicata and collateral estoppel rules of the court that rendered the underlying judgment. *See id.* at 81–82.

713 (Nev. 2008).  Given that SFR concedes that it was a party to the prior state court litigation, the Court limits its discussions to the first, second, and fourth factors. (*See* SFR's Resp. to BNYM's Mot. Summ. J. 19:13–14).

BNYM fails to meet the first factor.  While the precise issue was decided in state court *SFR Investments Pool 1, LLC v. Bank of America, N.A. FKA Countrywide Home Loans Servicing, LP et al.,* Case No. A698511-C, BNYM fails to demonstrate that the state court's determination applies to the relevant time period in this case.  The Nevada Supreme Court in *SFR Investments Pool 1, LLC v. Bank of Am., N.A.* affirmed that "*at the time relevant to* [the] *action*, it was NAS's business policy to refuse to respond to any letters from Miles Bauer requesting superpriority payoff amounts and to have its receptionist reject any check for less than the full lien amount, which included the subpriority components and NAS's own fees and costs." *SFR Investments Pool 1, LLC*, 459 P.3d 880 (Nev. 2020) (emphasis added).  The last time relevant in the state court case was in 2013 given that the state court found that NAS ignored BANA's offer made on October 16, 2013. (Findings of Fact 13:16–18, Ex. 32 to BNYM's Mot. Summ. J., ECF No. 125-32).  The HOA foreclosure sale here, however, occurred in 2014. (*See* Foreclosure Deed, Ex. 3 to BNYM's Mot. Summ. J.).  Because BNYM fails to demonstrate that BNYM's policy during the time of foreclosure in the state court cases also existed at the time of the foreclosure in this case, the Court finds that issues are not identical.  BNYM itself seemingly concedes that the cited cases and documents reference a time period slightly before the foreclosure sale in this case, but nevertheless asserts that SFR fails to provide contrary evidence that NAS changed its policy prior to the 2015 amendments of the statute. (BNYM's Reply to BNYM's Mot. Summ. J. 5:21–25).  Because BNYM carries the burden in demonstrating that the issues are identical and subsequently fails to meet that burden, the Court accordingly finds that issue preclusion does not establish that tender was futile in this

case. *See Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018) ("The party seeking to apply issue preclusion bears the burden of proving that it applies.").

### 2.  Evidence of NAS's Policy

Even without applying issue preclusion, BNYM argues that the evidence demonstrates that tender would have been futile. (BNYM's Mot. Summ. J. 17:20–19:1).  BNYM relies on Chris Yergensen's testimony from other cases that relate to NAS's policy in 2012. (*See* Trial Transcript in A707392, Ex. 26 to BNYM's Mot. Summ. J. 4: 4–17, ECF No. 124-26); (*see also* Trial Transcript A-14-695700-C, Ex. 28 to BNYM's Mot. Summ. J. 4: 6–14, ECF No. 124-28). For example, in Exhibit 27, Chris Yergensen testifies to NAS's policy that appears to relate to NAS's policy from 2011–2012. (*See* Trial Transcript in A-15-727274-C 5:17–22, Ex. 27 to BNYM's Mot. Summ. J., ECF No. 125-27).  Yergensen also testifies to NAS's policy in 2012 in Exhibit 26. (*See* Trial Transcript in A707392 4:4–17, Ex. 26 to BNYM's Mot. Summ. J., ECF No. 125-26).  Like BNYM's issue preclusion argument, BNYM fails to establish that NAS had a known business policy of rejecting tender at the time of the HOA foreclosure sale in 2014.  BNYM argues that, even if the cited cases and documents reference a time period slightly before the foreclosure sale in this case, SFR fails to provide contrary evidence that NAS changed its policy prior to the 2015 amendments of the statute. (BNYM's Reply to BNYM's Mot. Summ. J. 5:21–25).  BNYM, however, carries the burden in demonstrating that no genuine dispute of material fact exists. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) ("the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.").  Because BNYM fails to meet its burden, the Court finds that BNYM thus fails to establish that tender was futile.

### 3.  The Purported Sub-Priority Sale

BNYM additionally argues that NAS did not foreclose on the superpriority lien, but rather foreclosed on the lien's subpriority portion. (BNYM's Mot. Summ. J. 27:9–29:2).

Effectively, BNYM argues that HOA subjectively intended a subpriority-only sale. (*Id.*).  This assertion, however, does not support an inference that HOA did not intend to foreclose on its superpriority lien.  The foreclosure notices, as well as the foreclosure deed, constitute prima facie evidence that HOA foreclosed on the superpriority portion of its lien.  The notice of default and election to sell states that Borrowers failed to pay monthly assessments due through August 6, 2013, denoting that HOA's lien was comprised of nine months' worth of common assessments. (*See* Notice of Default, Ex. 19 to BNYM's Mot. Summ. J.).  The notice of foreclosure sale specifies that the winning bidder will acquire "all right, title, and interest," to the Property "without warranty express or implied." (*See* Notice of Foreclosure Sale, Ex. 22 to BNYM's Mot. Summ. J.).  These representations demonstrate that HOA did not elect to conduct a subpriority-only sale. *See Bank of New York Mellon v. K & P Homes, LLC*, 404 P.3d 403, 2017 WL 4790995, at \*1 (Nev. 2017) (unpublished) (holding that the foreclosure notice's reference to unpaid common assessments coupled with a foreclosure deed language stating that HOA conveys "all its right, title and interest" constitute prima facie evidence that HOA foreclosed on the superpriority portion of its lien.); *PNC Bank, Nat'l Ass'n v. Saticoy Bay LLC Series 9320 Mt. Cash Ave. UT 103*, 395 P.3d 511, 2017 WL 2334492, at \*2 (Nev. 2017) (unpublished) ("[W]e conclude that the language in the pre-sale notices constituted prima facie evidence that the HOA was foreclosing on a lien comprised of monthly assessments.").  Thus, HOA properly foreclosed on the superpriority portion of its lien, thereby extinguishing BNYM's DOT.

### 4.  Violation of Bankruptcy Stay

BNYM contends that the foreclosure sale should be set aside because the sale violated the automatic bankruptcy stay. (BNYM's Mot. Summ. J. 14:3–15:23).  HOA responds that the complained-of notices were recorded after discharge, and even if the notices violated the automatic stay, BNYM does not have standing to challenge violations of the automatic stay.

(HOA's Resp. to BNYM's Mot. Summ. J. 10:17–12:16).  BNYM contends that it has standing because "creditors like [BNYM] have standing to challenge violations of the automatic stay." (BNYM's Reply 10:17–12:3).

As a preliminary matter, the Court finds that BNYM fails to demonstrate that the sale violated the automatic bankruptcy sale because the exhibits BNYM uses to support its assertions are excluded.  However, even with the inclusion of the bankruptcy exhibits, the Court finds that BNYM fails to demonstrate the HOA foreclosure sale violated the automatic bankruptcy sale because BNYM does not have standing.  Courts in this district have repeatedly held that DOT holders do not have standing to challenge violations of the automatic stay solely from their status as creditors of the bankruptcy petitioner whose property is encumbered by the DOT. *See Bank of New York Mellon v. SFR Investments Pool 1, LLC*, No. 2:18-CV-00309-GMN-NJK, 2020 WL 1308323, at *2 (D. Nev. Mar. 19, 2020), appeal dismissed, No. 20-15694, 2020 WL 4018637 (9th Cir. June 9, 2020) (cataloging cases).  Here, BNYM's only alleged relationship with the bankruptcy proceedings is that Borrower also possessed an interest in the Property for which BNYM seeks to quiet title. (BNYM's Mot. Summ. J. 15:9–15).  This is insufficient to confer standing. *See, e.g., U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 2:15-CV-1527-JCM-CWH, 2018 U.S. Dist. LEXIS 111819, 2018 WL 3312980, at *7 (D. Nev. July 5, 2018).  Accordingly, to the extent BNYM seeks to void the foreclosure sale based upon a violation of the automatic stay, BNYM lacks standing to assert that theory.  The Court, therefore, denies BNYM's Motion for Summary Judgment on this ground.

### iv.  Wrongful Foreclosure

As alternative relief, BNYM requests that the Court set aside the foreclosure sale because the foreclosure was wrongful. (Compl. ¶¶ 54–60).  BNYM argues that the sale should be set aside because: (1) the sale price was inadequate; and (2) the sale was unfair or oppressive. (BNYM's Mot. Summ. J. 29:9–31:3).

Courts possess the inherent power, based in equity, to settle quiet title disputes. *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1110 (Nev. 2016).  In determining whether an HOA's non-judicial foreclosure sale may be set aside on equitable grounds, the relevant inquiry is "whether the sale was affected by fraud, unfairness, or oppression." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646 (Nev. 2017). The burden of establishing that a foreclosure sale should be set aside rests with the party challenging the sale. *Id*. at 646.

### 1.  Grossly Inadequate Price

BNYM argues that the Court should set aside the sale based upon the Property's grossly inadequate sale price. (BNYM's Mot. Summ. J. 29:9–13).  "[M]ere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Shadow Canyon*, 405 P.3d at 648 (declining to adopt a bright-line rule to equitably set aside a sale "based solely on price.").  Because a low sale price alone is an insufficient as a matter of law to justify setting aside a foreclosure sale, the Court turns to BNYM's additional allegations of unfair or oppressive conduct.

### 2.  Mortgagee Protection Clauses

BNYM asserts that HOA's repeated representations, including within its CC&Rs, that the DOT would be preserved constitute unfairness and oppression. (BNYM's Mot. Summ. J. 29:20–30:10).  The alleged misrepresentations are insufficient as a matter of law to constitute unfairness because the Nevada Supreme Court has repeatedly held that an HOA's CC&RS, including those that provide for mortgagee protection, do not supersede the statutory structure of NRS Chapter 116. *See SFR Invs. Pool 1*, 334 P.3d at 418-19 ("'Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien.' . . . The mortgage savings clause thus does not affect NRS 116.3116(2)'s

application in this case.") (citation omitted); *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings*, 373 P.3d 66, 73-74 (Nev. 2016) (holding that an HOA's CC&R provisions in contravention of NRS Chapter 116 "are superseded by statute and are thus negated."); *see also RLP-Vervain Court, LLC v. Wells Fargo*, 130 Nev. 1236, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) (declining to consider certified question of "whether an association may validly subordinate its assessment lien" in its CC&Rs because "there is controlling Nevada precedent" on point).

Furthermore, BNYM does not put forth any evidence that HOA's statements or CC&Rs affected the Property's sale price.[7]  Even if HOA made the alleged misrepresentations, BNYM has not demonstrated its entitlement to equitable relief because it has failed to provide any evidence that HOA's CC&Rs or other statements contributed to the inadequate price, by, for example, causing chilled bidding. *See U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 414 P.3d 809, 2018 WL 1448248, at *2 (Nev. 2018) (unpublished) (explaining it is "presumed that any potential bidders also were aware of NRS 116.1104.") (citing *Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Everyone is presumed to know the law and this presumption is not even rebuttable.")).

### 3.   Failure to Identify the Superpriority Amount

BNYM asserts that the foreclosure sale should be set aside because HOA failed to explain in its public notices whether it intended to foreclose on the superpriority portion of its lien, and if so, whether it intended to extinguish the DOT. (BNYM's Mot. Summ. J. 30:11–15). Failure to provide the superpriority amount, however, is not enough to constitute fraud, oppression, or unfairness.  As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives

---

[7] Though Plaintiff attached a copy of the CC&R in its Motion, Plaintiff does not cite to the CC&R in its argument. (*See* BNYM's Mot. Summ. J. 29:20–30:10).  Plaintiff only cites to Exhibit 3, the Foreclosure Deed. (BNYM's Mot. Summ. J. 29:20–21).

lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-CV-02808-APG-CWH, 2018 U.S. Dist. LEXIS 112753, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). Similarly, as explained above, the Nevada Supreme Court has rejected the argument that foreclosure notices must state the superpriority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d at 418 (*en banc*). Therefore, HOA's failure to identify the superpriority portion of the lien is not sufficient to justify setting aside the sale.

### v. Deceptive Trade Practices

HOA seeks summary judgment against BNYM's deceptive trade practices claim, arguing that the claim fails as a matter of law because: (1) the Nevada Deceptive Trade Practices Act ("NDTPA") does not apply to BNYM and non-judicial foreclosures; and (2) the claim for relief fails to meet the standards of particularity required under Nevada Rule of Civil Procedure 9(b). (HOA's Mot. Summ. J. 13:2–15:26). BNYM responds that: (1) NDTPA applies to this case; (2) HOA made a number of false representations; and (3) its claim is properly pled with particularity. (BNYM's Resp. to HOA's Mot. Summ. J. 11:17–13:17, ECF No. 117).

As an initial matter, the Court concludes that some provisions of the NDTPA apply to non-judicial foreclosure sales. The Complaint asserts claims for deceptive trade practices under NRS 598.0915(15), NRS 598.092(8), and NRS 598.0923(2)-(3). (Compl. ¶¶ 72–74). While NRS 598.0923(2)–(3) are not applicable because the subsections expressly apply to "the sale or lease of goods or services," the remaining two provisions can apply to the non-judicial foreclosure sale of real property.

The Court, however, agrees with HOA that the claim is not adequately pled in the Complaint.  BNYM's claim sounds in fraud and must be pled with particularity. *Bank of N.Y. Mellon v. Sierra Ranch Homeowners Ass'n*, No. 2:15-CV-1914-JCM-PAL, 2017 U.S. Dist. LEXIS 17242, 2017 WL 3174904 at *5–*6 (D. Nev. July 26, 2017).  Pleading with particularity requires that the Complaint provide plausible allegations of "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  BNYM's Complaint does not identify with particularity the content of HOA's false statements or how BNYM relied on the allegedly false statements. (*See* Compl. ¶¶ 68–76).  Accordingly, the Court dismisses BNYM's deceptive trade practices claim with leave to amend.

### vi. SFR's Motion for Summary Judgment

SFR seeks summary judgment on two grounds: (1) that the DOT purportedly held by BNYM was extinguished by the HOA's foreclosure sale; and (2) that the BNYM's lis pendens is expunged. (SFR's Mot. Summ. J. 11:3–13:11).  SFR argues that "when [BNYM] fails to timely bring a lawsuit to either rebut the presumptive validity of the sale or challenge the sale foreclosed on superpriority amounts, then the effect of the sale remains intact." (*Id*. 12:5–7).  Indeed, a properly conducted HOA foreclosure sale extinguishes all junior interests, including a deed of trust. *SFR Investments Pool 1*, 334 P.3d at 419 ("NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust.").  SFR is therefore entitled to summary judgment unless there is some basis to equitably set aside the HOA foreclosure sale. *See Shadow Wood HOA v. N.Y. Cmty. Bancorp*., 366 P.3d 1105, 1112 (Nev. 2016) (*en banc*).  Given that this Order denies BNYM's claims for summary judgment on its quiet title/declaratory judgment and wrongful foreclosure claims, the result is that SFR purchased the Property unencumbered by BNYM's interest.

As to SFR's request to expunge BNYM's lis pendens, the Court denies SFR's request. The lis pendens, by statute, is "a notice of the pendency of the action[.]" Nev. Rev. Stat. § 14.010(1). "The doctrine of lis pendens provides constructive notice to the world that a dispute involving real property is ongoing." *Weddell v. H2O, Inc.*, 271 P.3d 743, 751 (Nev. 2012); *see also Wensley v. First Nat. Bank of Nevada*, 874 F. Supp. 2d 957 (D. Nev. 2012) (granting the request to expunge the lis pendens concurrent with order dismissing the action); *accord Am. Town Center v. Hall 83 Associates*, 912 F.2d 104, 110 (6th Cir. 1990) ("With the complaint dismissed, the notices of lis pendens no longer served any purpose."). Given that BNYM may amend its Complaint as to its deceptive practices claim, the Court finds that there is still an ongoing dispute regarding the Property.

## IV.    CONCLUSION

**IT IS FURTHER ORDERED** that Defendant SFR's Motion for Summary Judgment, (ECF No. 120), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant HOA's Motion for Summary Judgment, (ECF No. 117), is **GRANTED in part and DENIED in part**. The Court grants HOA summary judgment against BNYM's quiet title, breach of NRS 116.1113, and wrongful foreclosure claims. The Court grants dismissal of BNYM's deceptive trade practices claim with leave to amend. BNYM may file an amended complaint curing the deficient pleading of the deceptive trade practices claim within twenty-one (21) days from entry of this Order.[8] Failure to file an amended complaint within the time allowed will result in dismissal with prejudice.

---

[8] To the extent that BNYM no longer maintains a personal stake in this case, the Court notes that FRCP 25 allows substitution of a party. Under Federal Rule of Civil Procedure 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." BNYM may, therefore, file a motion substituting Catamount as a party if the parties so desire.

**IT IS HEREBY ORDERED** that BNYM's Motion to Dismiss or Motion for Summary Judgment, (ECF Nos. 124–125), is **DENIED**.

**IT IS FURTHER ORDERED** that SFR's Counter-Motion to Strike, (ECF No. 138), is **GRANTED in part and DENIED in part**.

**DATED** this __2__ day of March, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT